## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

---

DANA ANDERSON,
*Plaintiff,*

v.

LORENZO LEWIS, in his personal and
individual capacities; JEAN RHODEN, in
her personal and individual capacities; and
MARYBETH BONSIGNORE, in her
personal and individual capacities,
*Defendants.*

No. 3:20-cv-00370 (VAB)

---

## RULING AND ORDER ON MOTION TO DISMISS

Dana Anderson ("Plaintiff") has sued Lorenzo Lewis, Jean Rhoden, and Marybeth

Bonsignore (collectively, "Defendants"). Ms. Anderson alleges claims under federal law, 42

U.S.C. § 1981and 42 U.S.C. § 1983, and Connecticut's statutes, Conn. Gen. Stat. §§ 46a-

60(b)(1), 46a-60(b)(8), and 46a-70(a)-(c), and common-law claims for battery, assault, false

imprisonment, intentional infliction of emotional distress, negligent infliction of emotional

distress, negligence, and negligent hire, supervision, and retention, although not all claims are

alleged against all of the Defendants. She seeks various forms of relief including, *inter alia*,

"[f]ront pay and benefits," "[c]ompensatory damages," "[p]unitive damages," and [i]njunctive

relief." *See* First Am. Compl., ECF No. 11, at 32 (Apr. 8, 2020) ("Am. Compl.").

Defendants have moved to dismiss the operative pleading, Ms. Anderson's Amended

Complaint, in its entirety.

For the reasons stated below, Defendants' motion to dismiss is **GRANTED**.

Ms. Anderson will be granted leave to file a Second Amended Complaint by **April 30,**

**2021**. Any such pleading, however, must be limited to the only viable claim in federal court: her

federal claim brought under 42 U.S.C. § 1983, as limited by this opinion. It would be futile, and the Court therefore does not grant her leave to file a Second Amended Complaint that includes any of her alleged Connecticut statutory and common-law claims against any of these Defendants, as well as her alleged federal claim brought under 42 U.S.C. § 1981.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual Allegations

Dana Anderson is a "forty-nine (49) year[] old[] African American female." Am. Compl. ¶ 3. Ms. Anderson allegedly was "employed by the State of Connecticut Department of Social Services [("DSS")]," *id.*, from "around 2012 [until] she was [allegedly] terminated on [or around] May 25, 2018," *id.* ¶ 5. "The Department of Social Services is a state agency [that allegedly] employs more than thirty individuals." *Id.* ¶ 38. "During her tenure at DSS, [Ms. Anderson] [allegedly] received three promotions, good/excellent work performances, and salary increases." *Id.* ¶ 40. At the time of her termination, Ms. Anderson allegedly "earned approximately $63,000.00 annually." *Id.* ¶ 6.

Alonzo Lewis allegedly is "a forty (40) year old African American male," also "employed by [DSS], as a Quality Control Reviewer." *Id.* ¶ 10.

Jean Rhoden allegedly served as "a state official and [] was the immediate supervisor of both [Ms. Anderson] and [Mr.] Lewis. *Id.* ¶ 24.

Marybeth Bonsignore allegedly served as "the Manager/Director of Human Resources at DSS." *Id.* ¶ 32.

While working at DSS, from around "2014 through 2018," Mr. Lewis allegedly "subjected [Ms. Anderson] to numerous instances of unwanted touching . . . with his hands," including, "touching her buttocks," "snapping the strap of her brassiere" and "jamming the back

2

of his office chair, and [] knees into [Mrs. Anderson] . . . over constant objections." *Id.* ¶¶ 44-45, 47. In addition to the alleged "unwanted and offensive touching," Mr. Lewis also allegedly made "numerous unwanted comments" about her body as well as other "lewd and lascivious comments." *Id.* ¶¶ 46, 48-51.

Ms. Anderson allegedly "lodged numerous complaints against [Mr.] Lewis to her superiors, [Ms.] [] Rhoden and [Ms.] Bonsignore," but they allegedly "provided [Ms. Anderson] no meaningful remedy or relief." *Id.* ¶ 53. Ms. Rhoden and Ms. Bonsignore allegedly "ordered a mediation between [Ms. Anderson] and [Mr.] Lewis," but allegedly did not "heighten his supervision or terminate his employment." *Id.* ¶ 54.

"[I]n or around June 2015, [Ms. Anderson] and her work unit were [allegedly] transferred" from one location in Harford, Connecticut, "to DSS's headquarter[s]" also in Hartford. *Id.* ¶ 57. In DSS's headquarters, Ms. Anderson allegedly was "positioned in the same row as [Mr.] Lewis, where [they] were [allegedly] separated only by the walls of their respective cubicles." *Id.* ¶ 59. Mr. Lewis allegedly "immediately" began engaging in the same conduct at their former location. *Id.* ¶¶ 60-61.

On or around March 22, 2018, Ms. Anderson allegedly "boarded an elevator" and while looking for her cellular phone "failed to notice [Mr.] Lewis had entered the elevator and was standing inches away from her face." *Id.* ¶¶ 64-65. Mr. Lewis then allegedly "grabbed [Ms. Anderson] by the throat and began choking her." *Id.* ¶ 66. Ms. Anderson allegedly tried to "defend herself by punching [Mr.] Lewis," "while he continued to choke her." *Id.* ¶ 68. The violent altercation allegedly continued until "the elevator stopped at the building's lobby." *Id.* ¶¶ 68-72. Ms. Anderson allegedly "ran over to a security officer and informed him that she was assaulted by [Mr.] Lewis on the elevator, but the security guard merely laughed at her." *Id.* ¶ 73.

After a few minutes, Ms. Anderson allegedly went back to the elevator and Mr. Lewis allegedly "jump[ed] back into [it]" with her. *Id.* ¶ 74. "As soon as the elevator door closed," Mr. Lewis allegedly "grabb[ed] [Ms. Anderson] again by the throat and began choking her." *Id.* ¶ 75.

On or around March 26, 2018, Ms. Anderson allegedly "file[d] a complaint to Human Resources" after being "urged" to do so by Ms. Rhoden. *Id.* ¶ 80.

On or around April 6, 2018, Ms. Anderson allegedly also "filed a complaint with the Connecticut State Police and [] was [allegedly] questioned about [Mr.] Lewis assaulting her." *Id.* ¶ 81.

On or around May 25, 2018, Ms. Anderson allegedly was "terminated by DSS on the [] basis [that] she misrepresented some details of the elevator incident," *id.* ¶ 82, while Mr. Lewis was allegedly "retained by DSS" and later "promoted," *id.* ¶ 83.

Ms. Anderson alleges that "[Mr.] Lewis has engaged in similar assaultive conduct with at least four (4)[1] other female staffers at DSS, including a supervisor . . . [and] he was never terminated." *Id.* ¶ 85.

## B.  Procedural History

On March 18, 2020, Ms. Anderson filed her initial Complaint against Defendants in this Court. Compl., ECF No. 1 (Mar. 18, 2020).

On April 8, 2020, Ms. Anderson filed an Amended Complaint. Am. Compl.

On May 14, 2020, Defendants filed a motion to dismiss Ms. Anderson's Amended Complaint. Defs.' Mot. to Dismiss, ECF No. 21 (May 14, 2020); Mem. of L. in Supp. of Mot. to Dismiss, ECF No. 21-1 (May 14, 2020) ("Defs.' Mem.").

---

[1] The Court notes that Ms. Anderson's Amended Complaint alleges that there were "at least four" women assaulted by Mr. Lewis, *see* Am. Compl. at 11 ¶ 85, but in her opposition to Defendants' motion to dismiss she alleges that "[p]rior to being terminated, [she] learned that [Mr.] Lewis had assaulted nine other state employees . . . ." Pl.'s Mem. of L. in Opp'n to Defs.' Mot. to Dismiss, ECF No. 34, at 9 (July 9, 2020) ("Pl.'s Opp'n").

On July 9, 2020, Ms. Anderson filed an opposition to Defendants' motion to dismiss. Pl.'s Opp'n.

On August 4, 2020, Defendants filed a reply to Ms. Anderson's opposition to the motion to dismiss. Reply to Pl.'s Opp'n to Mot. to Dismiss, ECF No. 41 (Aug. 4, 2020) ("Defs.' Reply").

On August 6, 2020, Ms. Anderson filed a sur-reply in response to Defendants' reply to her opposition to the motion to dismiss. Pl.'s Further Resp. & Suppl. to Her Opp'n to Defs.' Mot. to Dismiss, ECF 42 (Aug. 6, 2020) ("Pl.'s Sur-Reply").

On August 7, 2020, Ms. Anderson filed a notice of additional authority to supplement her sur-reply. Notice of Additional Auth., Ex. 8, ECF No. 43 (Aug. 7, 2020) ("Pl.'s Suppl.").

## II.   STANDARD OF REVIEW

### A.  Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under [Federal] Rule [of Civil Procedure] 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citing Fed. R. Civ. P. 12(b)(1)). The plaintiff bears the burden of establishing by a preponderance of the evidence that the court has subject matter jurisdiction over the claims. *See id.*

"When considering a motion to dismiss [under] Rule 12(b)(1), the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff." *Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir. 2000); *see also Nat. Res. Def. Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006) (quoting Sweet, 235 F.3d at 83). The court, however, may also resolve disputed jurisdictional issues "by referring to evidence outside of the pleadings, such as affidavits, and if necessary, hold an evidentiary hearing." *Karlen ex rel. J.K. v. Westport Bd. of*

*Educ.*, 638 F. Supp. 2d 293, 298 (D. Conn. 2009) (citing *Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000)).

"When the Rule 12(b)(1) motion is facial, *i.e.*, based solely on the allegations of the complaint . . ., the plaintiff has no evidentiary burden." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016). "A defendant is [also] permitted to make a fact-based Rule 12(b)(1) motion, proffering evidence beyond the [p]leading." *Id.* "In opposition to such a motion, the plaintiffs will need to come forward with evidence of their own to controvert that presented by the defendant 'if the affidavits submitted on a 12(b)(1) motion . . . reveal the existence of factual problems' in the assertion of jurisdiction." *Id.* (omission in original) (quoting *Exchange Nat'l Bank of Chicago v. Touche Ross & Co.*, 544 F.2d 1126, 1131 (2d Cir. 1976)).

### B. Rule 12(b)(5)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(5) due to insufficient service of process "must be granted if the plaintiff fails to serve a copy of the summons and complaint on the defendants pursuant to Rule 4 of the Federal Rules [of Civil Procedure], which sets forth the federal requirements for service." *Rzayeva v. United States*, 492 F. Supp. 2d 60, 74 (D. Conn. 2007); *see* Fed. R. Civ. P. 12(b)(5). "Once validity of service has been challenged, it becomes the plaintiff's burden to prove that service of process was adequate." *Cole v. Aetna Life & Cas.*, 70 F. Supp. 2d 106, 110 (D. Conn. 1999).

### C. Rule 12(b)(6)

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Any claim that fails "to state a claim upon which relief can be granted" will be dismissed. Fed. R. Civ. P. 12(b)(6). In reviewing a

complaint under Rule 12(b)(6), a court applies a "plausibility standard" guided by "two working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (internal citations omitted)). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. Thus, the complaint must contain "factual amplification . . . to render a claim plausible." *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009)).

When reviewing a complaint under Federal Rule of Civil Procedure 12(b)(6), the court takes all factual allegations in the complaint as true. *Iqbal*, 556 U.S. at 678. The court also views the allegations in the light most favorable to the plaintiff and draws all inferences in the plaintiff's favor. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013); *see also York v. Ass'n of the Bar of the City of N.Y.*, 286 F.3d 122, 125 (2d Cir. 2002) ("On a motion to dismiss for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true.").

A court considering a motion to dismiss under Rule 12(b)(6) generally limits its review "to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). A court may also consider

"matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).

### D.     Rule 12(h)(3)

On a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the "plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003). The plaintiff therefore must make a prima facie showing that jurisdiction exists. *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012).

"The prima facie showing must include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant." *Id.* (internal quotation marks omitted); *see also Glenwood Sys., LLC v. Med-Pro Ideal Sols., Inc.*, No. 3:09-cv-956 (WWE), 2010 WL 11527383, at *2 (D. Conn. May 4, 2010) ("At this stage of the proceedings, if the court relies upon pleadings and affidavits, the plaintiff must make out only a prima facie showing of personal jurisdiction, and the affidavits and pleadings should be construed most favorably to the plaintiff.") (citing *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986)), *aff'd*, 438 F. App'x 27 (2d Cir. 2011). A court considers the facts as they existed when the plaintiff filed the complaint. *See Glenwood Sys., LLC*, 2010 WL 11527383, at *2 (citing *Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria*, 937 F.2d 44, 52 (2d Cir. 1991)).

### E.   Rule 15

Rule 15 of the Federal Rules of Civil Procedure provides that a party may either amend once as a matter of course within 21 days of service or the earlier of 21 days after service of a required responsive pleading or motion under Rule 12 (b), (e) or (f). Fed. R. Civ. P. 15(a)(1). Once that time has elapsed, a party may move for leave to file an amended complaint. Fed. R. Civ. P. 15(a)(2). The "court should freely give leave when justice so requires." *Id.*

The decision to grant leave to amend under Fed. R. Civ. P. 15 is within the discretion of the court, but the court must give some "justifying reason" for denying leave. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Reasons for denying leave to amend include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc[.]" *Id.*; *see also Lucente v. Int'l Bus. Machines Corp.,* 310 F.3d 243, 258 (2d Cir. 2002) (noting leave to amend may be denied when amendment is "unlikely to be productive," such as when an amendment is "futile" and "could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).").

## III.   DISCUSSION

Ms. Anderson alleges ten claims in her Amended Complaint: (1) a violation of 42 U.S.C. §§ 1981 and 1983 claim, (2) a violation of Conn. Gen. Stat. §§ 46a-60(b)(1), 46a-60(b)(8), 46a-70(a)-(c) claim, (3) a battery claim, (4) an assault claim, (5) a false imprisonment claim, (6) an intentional infliction of emotional distress claim, (7) a negligent infliction of emotional distress claim, (8) a negligence claim, (9) a second violation of 42 U.S.C. § 1983 claim, and (10) a negligent hire, supervision and retention claim.

Defendants have moved to dismiss each of these claims.

The Court will address each claim in turn, but first will address the jurisdictional issues raised by Defendants relating to the state law claims, before addressing any remaining claims.

### A.  The State Law Claims and Jurisdiction

#### i.  Service of Process

Federal Rule of Civil Procedure 4(j)(2)(B) requires that a "state . . . or any other state-created governmental organization" being sued in federal court be served "in the matter prescribed by that state's law." Fed. R. Civ. P. 4(j)(2)(B). Connecticut General Statutes § 52-64 provides that "service of civil process on a department of the state or employee of the same 'may be made by a proper officer [by] [] leaving a true and attested copy of the process, including the declaration or complaint, with the Attorney General at the office of the Attorney General in Hartford . . . ." *Williams v. State of Conn.*, No. 3:15-CV-627 (VAB), 2016 WL 4472935, at *3 (D. Conn. Aug. 24, 2016) (alteration in original) (quoting Conn. Gen. Stat. § 52-64). Employees of the State of Connecticut, who are sued in their official capacities, also must be served consistent with this same statute. *See Banerjee v. Roberts*, 641 F. Supp. 1093, 1099 (D. Conn. 1986) ("Connecticut law authorizes the Attorney General to accept service on behalf of the state and 'any officer, servant, agent or employee of the state as such.'" (quoting Conn. Gen. Stat. § 52-64)); *see also Bogle-Assegal v. Connecticut*, 470 F.3d 498, 507 (2d Cir. 2006) ("[D]elivery to the Attorney General constitutes service on an individual state officer or employee 'as' an officer or employee.").

Defendants state that they are "unclear" what Ms. Anderson means by "personal capacity" when asserting her claims; but if the "reference [is] to the three (3) individuals in their official capacities, the Court lacks jurisdiction," Defs.' Mem. at 10, because Ms. Anderson allegedly "failed to properly serve the defendants in their official capacities," *id.* at 11.

According to Defendants, Ms. Anderson has not met the requirements of proper service under Federal Rule of Civil Procedure 4(j)(2) or under Connecticut General Statutes § 52-64. *Id.* Defendants argue that "the summons and complaint for the three individuals [were] served at their respective residences, which constitutes individual service [under Connecticut General Statutes §] 52-57." *Id.* They further allege that under Connecticut General Statutes § 52-64, this is "not proper service upon the defendants in their official capacities." *Id.*

Ms. Anderson argues that "[Mr.] Lewis, [Ms.] Rhoden[,] and [Ms.] Bonsignore were served with the initial complaint . . . in their individual capacities by [a] State Marshal," Pl.'s Opp'n at 10, and "[s]ervice was perfected as to all three [] defendants in their individual capacities, at their place of abode," *id.* at 14. She alleges that Defendants were served in "their official capacities" "at[]the State of Connecticut Office of the Attorney General." *Id.*

Because Defendants have not disputed having been properly served in their individual capacities, Defs.' Mem at 10 ("Defendants Lewis, Rhoden and Bonsignore were served only in their individual capacities."), and Defendants no longer appear to be contesting that they also were properly served in their official capacities, Defs.' Reply Mem. at 1-2 (noting that Plaintiff argues that they "were served in their official capacities and in a timely fashion . . . [but] fails to address the argument that the defendants cannot be sued for damages in their official capacities under § 1983." (footnote omitted)), Defendants' motion to dismiss on the ground of lack of service of process will be denied.

### ii.     Subject Matter Jurisdiction

Defendants also argue that Counts Two, Three, Four, Five, Six, Seven, Eight and Ten of Ms. Anderson's Amended Complaint "are barred by the Eleventh Amendment." Defs.' Mem. at 12. They argue that "[a] claim against a state agency or state officer in her official capacity is

considered a claim against the state, and implicate[s] the Eleventh Amendment because the state is the real, substantial party in interest." *Id.* at 13 (quoting *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 101 (1984)) (internal quotation marks omitted).

Defendants allege that in Connecticut, "common law actions for damages against the state are barred by sovereign immunity." *Id.* at 15 (collecting cases). They further allege that "a suit for recovery of money damages may not be maintained against the state itself, or against any agency or department of the state, unless the state has waived its sovereign immunity under the Eleventh Amendment." *Id.* at 16 (quoting *Florida Dep't of State v. Treasure Salvors*, 458 U.S. 670, 684 (1982)).

Defendants argue that "Connecticut General Statutes § 4-160 allows the State of Connecticut Claims Commissioner to authorize suit against the State when she deems it just and equitable." *Id.* (internal quotation marks omitted). Defendants allege that Ms. Anderson "must first file a complaint with the Claims Commissioner and demonstrate that [she] ha[s] received permission to sue the State." *Id.* at 15-16 (citing Conn. Gen. Stat. §§ 4-147 – 4-158).

Defendants argue that Ms. Anderson "has not alleged that she received permission to sue the state from the Claims Commissioner," and, therefore, "there has been no waiver of sovereign immunity, by statute or by authorization of the Claims Commissioner." *Id.* at 16. According to Defendants, on these grounds, the Court does not have "subject matter jurisdiction over [Ms. Anderson]'s common law tort claims." *Id.*

Ms. Anderson argues that in this case she did not need authorization from the Claims Commissioner. *See* Pl.'s Opp'n at 18. Ms. Anderson argues that Connecticut General Statutes § 4-142 requires that the Claims Commissioner "hear and determine all claims against the state."

*Id.* According to Ms. Anderson, "[t]here is no requirement that claims against state employees in their individual capacity must go through the Office of [the] Claims Commissioner." *Id.*

The Court disagrees.

Under Connecticut law, "[n]o state officer or employee shall be personally liable for damage or injury, not wanton, reckless or malicious, caused in the discharge of his or her duties or within the scope of his or her employment." Conn. Gen. Stat. § 4-165(a). While Ms. Anderson arguably alleges that the state employees here acted "wantonly, recklessly or maliciously," the Court need not reach that issue "because Plaintiff has failed to exhaust [her] administrative remedies before bringing these claims." *Weber v. McCormick*, No. 3:06-cv-2009 (PCD), 2007 WL 9754640, at *13 (D. Conn. Oct. 2, 2007). "Section 4-165 also provides that 'Any person having a complaint for such damage or injury shall present it as a claim against the state under the provisions of this chapter.'" *Id.* (quoting Conn. Gen. Stat. § 4-165(a)). In other words, just as if Ms. Anderson had sued the State of Connecticut or a subdivision of the State directly, before filing suit, she "must first file a claim with the State [C]laims [C]ommissioner in accordance [with Connecticut law]." *Id.* Having failed to do so, all of Ms. Anderson's state law claims "against the State Defendants in their individual capacities must be dismissed for failure to allege exhaustion of an administrative remedy." *Id.*

Accordingly, all of Ms. Anderson's state law claims under Connecticut General Statutes §§ 46a-60(b)(1), 46a-60(b)(8), and 46a-70(a)-(c), and the common-law claims for battery, assault, false imprisonment, intentional infliction of emotional distress claim, negligent infliction of emotional distress, negligence, and for negligent hire, supervision and retention, will be dismissed from this case.[2]

---

[2] Notwithstanding the exhaustion of administrative remedies issues, as to the claims brought against these Defendants in their official capacities and any relief sought from these Defendants in their official capacities under

### B. The Federal Claims

### i. The § 1981 Claim

Section 1981, enacted as part of the Civil Rights Act of 1866, provides that "all persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981.[3] In 1991, Congress amended the statute to add a definition of "make and enforce contracts" that included the "termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). Congress thus extended § 1981 to apply to "harassing conduct that occurred after the formation of the contract" – i.e., during employment, not merely during the formation of the employment contract. *See Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 372-73 (2004).

To establish a claim under 42 U.S.C. § 1981. Ms. Anderson must allege: (1) being a member of a racial minority; (2) Defendants' intent to discriminate on the basis of race; and (3) "discrimination concerning one of the statute's enumerated activities." *Brown v. City of Oneonta*, 221 F.3d 329, 339 (2d Cir. 2000). A § 1981 claim also must "initially identify an impaired 'contractual relationship' under which the plaintiff has" or would have rights, had it been formed. *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006) (quoting 42 U.S.C. §1981(b)). "[A] mere agent, who has no beneficial interest in a contract which he has made on behalf of his principal, cannot support an action thereon . . . ." *Id.*; *see id.* ("Section 1981 offers

---

state law, Ms. Anderson also has an Eleventh Amendment immunity problem because she brought these claims in federal court rather than before Connecticut's own courts. *See, e.g.*, *Halderman*, 465 U.S. at 100 n.9 ("[A] State's waiver of sovereign immunity in its own courts is not a waiver of the Eleventh Amendment immunity in the federal courts."). As a result, to the extent that any of her claims were brought against any of the Defendants in their official capacities, these claims would have to be dismissed on that basis as well.

[3] While Ms. Anderson pleads that Count One is based on both Section 1981 and 1983, in the absence of any viable case law suggesting that such a combined claim exists, the Court instead analyzes these two statutes as if pled as two distinct claims.

relief when racial discrimination blocks the creation of a contractual relationship, as well as when racial discrimination impairs an existing contractual relationship, so long as the plaintiff has or would have rights under the existing or proposed contractual relationship.").

As a result, leaving aside the issue as to whether Section 1981 "claims involve a 'state actor,' the plaintiff's exclusive remedy lies in her action under 42 U.S.C. § 1983," Defs.' Reply Mem. at 4-5 (citing, *inter alia*, *Jett v. Dallas Ind. Sch. Dist.*, 491 U.S. 701 (1989)). Ms. Anderson has not alleged a contractual relationship with any of the Defendants. Instead, she only has alleged having been "employed by the State of Connecticut Department of Social Services [("DSS")]." Am. Compl. ¶ 3.

In addition, to the extent that this Section 1981 claim is premised on a "class of one" equal protection theory of liability, *see* Pl.'s Opp'n at 23, it surely fails as a matter of law. Indeed, as the Supreme Court has made clear, the "class-of-one theory of equal protection – which presupposes that like individuals should be treated alike, and that to treat them differently is to classify them in a way that must survive at least rationality review – is simply a poor fit in the public employment context." *Engquist v. Oregon Dep't. of Agric.*, 553 U.S. 591, 605. "A challenge that one has been treated individually in this context, instead of like everyone else, is a challenge to the underlying nature of the government action." *Id.*

Accordingly, for all of these reasons, Ms. Anderson's Section 1981 claim will be dismissed.[4]

---

[4] Because Ms. Anderson sought nearly all of her relief through Section 1981, including front pay and benefits, compensatory damages, punitive damages, and injunctive relief, *see* Am. Compl at 32, the dismissal of this claim eliminates the availability of all of this relief in this case. But, as discussed below, Ms. Anderson may have a viable Section 1983 claim distinct from any Section 1981 claim, and a properly drafted Second Amended Complaint arguably may properly allege such relief. As a result, the dismissal of the Amended Complaint in its entirety does not preclude the possibility of this same relief entirely, provided such relief is not precluded under Section 1983 as a matter of law.

ii.   **The § 1983 Claim**[5]

Section 1983 provides a private right of action against state and local government

officials for constitutional violations:

> Every person who, under color of any statute, ordinance, regulation,
> custom, or usage, of any State or Territory . . . subjects, or causes to
> be subjected, any citizen of the United States or other person within
> the jurisdiction thereof to the deprivation of any rights, privileges,
> or immunities secured by the Constitution and laws, shall be liable
> to the party injured in an action at law, suit in equity, or other proper
> proceeding for redress . . . .

42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but merely provides a

method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271

(1994) (internal quotation marks and citation omitted).

In *McDonnell Douglas Corp. v. Green*, the Supreme Court established a burden-shifting

framework to evaluate claims of employment discrimination and outlined the elements of a

prima facie case. 411 U.S. 792 (1973). In the Second Circuit, under this standard, a plaintiff must

show: (1) she is a member of a protected class; (2) she was qualified for her position; (3) she

suffered an adverse employment action; and (4) there is "at least minimal support for the

proposition that the employer was motivated by discriminatory intent." *Littlejohn v. City of N.Y.*,

795 F.3d 297, 311 (2d Cir. 2015). A plaintiff's burden for establishing a prima facie case is de

---

[5] Count Nine of the Amended Complaint suggests a distinct Section 1983 claim arising out of Ms. Anderson's employment, regarding deliberate indifference to violence in the workplace, inadequate supervision, and a failure to protect her from an "unreasonable" risk of injury. Am. Compl. ¶¶ 197-214. But no underlying constitutional right is described, and to the extent described, ultimately appears to be inextricably linked to the claims of discrimination detailed in Count One, instead of raising a distinct constitutional claim. *See* Pl.'s Opp'n at 21 (citing to caselaw for the proposition that: "Public employees have a clear right, protected by the Fourteenth Amendment, to be free from discrimination on the basis of sex in public employment.") (citations and internal quotation marks omitted). As a result, as discussed below, if Ms. Anderson chooses to file an amended pleading as to her Section 1983 claim only, the Court's leave to do so should be construed as permitting, at best, only a single Section 1983 theory for discrimination in public employment, one arising solely from the alleged discrimination in the workplace. Of course, this single legal theory may give rise to more than one claim, depending on whether Ms. Anderson continues to allege that the discrimination in the workplace occurred because of her race, because of her sex, because of the creation of a hostile work environment because of her race, and because of the creation of a hostile work environment because of her sex.

16

minimis. *Woodman v. WWOR–TV, Inc.*, 411 F.3d 69, 76 (2d Cir. 2005) ("We have characterized plaintiff's prima facie burden as 'minimal' and 'de minimis.'" (citing *Zimmermann v. Assocs. First Cap. Corp.*, 251 F.3d 376, 381 (2d Cir. 2001))).

Ms. Anderson alleges that Defendants discriminated against her on the basis of her "race, sex, harassment and hostile work environment," in violation of § 1981. Am. Compl. ¶ 88.

Defendants argue that "[a] plaintiff can allege that her employer took adverse action against her at least in part for a discriminatory reason by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." Defs.' Mem. at 19. According to Defendants, Ms. Anderson cannot bring such a claim against them because "[n]one of [her] allegations provide any facts about how the defendants discriminated [against] her . . . ." *Id.* at 20.

The Court agrees and will dismiss this claim, but only because all of the allegations related to discrimination in the Amended Complaint are described as violations of Section 1981, a claim this Court intends to dismiss, and not through Section 1983, through which Ms. Anderson, based on the allegations in the First Amended Complaint related to Section 1981, plausibly could state a claim.

Disparate treatment claims under Section 1983 are "subject to the burden-shifting evidentiary framework set forth in *McDonnell Douglas*." Littlejohn, 795 F.3d at 312 (citing *Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 491 (2d Cir. 2010)); *see Moore v. Ferron-Poole*, No. 3-14-CV-1540 (WWE), 2016 WL 6476937, at *2 (D. Conn. Oct. 31, 2016) ("An equal protection claim [under] Section 1983 is analyzed according the burden shifting framework established by *McDonnell Douglas*.") As the Second Circuit noted in *Littlejohn*,

> absent direct evidence of discrimination, what must be plausibly
> supported by facts alleged in the complaint is that the plaintiff is a

> member of a protected class, was qualified, suffered an adverse
> employment action, and has at least minimal support for the
> proposition that the employer was motivated by discriminatory
> intent.

795 F.3d at 311.

While sparse, the allegations in Ms. Anderson's Amended Complaint, although currently described as related to a Section 1981 claim, may survive a motion to dismiss, if they instead related to a Section 1983 claim. *See* Am. Compl. ¶ 3 (Plaintiff is an "African American female"); *id.* ¶ 40 (alleging that "she received three promotions, good/excellent work performance, and salary increases"); *id.* ¶ 91 (alleging that "defendants deprived the Plaintiff of her right to employment, the right to be free from violations of her person by way of assault and battery, and her right to be free from a pervasively hostile work environment, and discrimination on the basis of her race and sex . . . ."); and *id.* ¶ 92 (alleging "[t]hat the Plaintiff's race and sex were motivating factors in the defendant's decision and subsequent unlawful conduct"). At this stage of the case, if pleaded properly as a Section 1983 claim, Ms. Anderson is not required to "give plausible support to the ultimate question of whether the adverse employment action was attributable to discrimination." *Littlejohn*, 795 F.3d at 311.[6]

Nevertheless, to the extent that any Section 1983 claim remains, this claim cannot be for damages or retrospective relief against any of the Defendants in their official capacities. *See Mercer v. Schriro*, 337 F. Supp. 3d 109, 136 (D. Conn. 2018) ("[A]s to Plaintiff's suit against the Commissioner in her official capacity for damages and/or retrospective relief for a violation of federal law under section 1983, she is not a 'person' subject to section 1983 liability.").

---

[6] Because the Court is dismissing this claim, the Court need not and will not definitively decide now whether Ms. Anderson has a viable basis for holding these supervisors liable for any alleged discrimination to her. Nevertheless, for the same reasons that Ms. Anderson lacks a viable Section 1981 claim under a class-of-one theory, she also lacks a viable Section 1983 claim under this theory as well.

Accordingly, Defendants' motion to dismiss Ms. Anderson's claims brought under 42 U.S.C. § 1983 will be granted, although this dismissal would be without prejudice to bringing this Section 1983 claim, if properly pled in an amended pleading, provided that it is not a claim for damages or retrospective relief against any of the Defendants in their official capacities or is premised on a class-of-one theory.

## C.  Leave to Amend

Finally, Ms. Anderson seeks leave to amend the Amended Complaint, "[t]o the extent the [C]ourt finds any ambiguity . . . or failings in the pleadings." Pl.'s Opp'n at 25.

"[A] motion for leave to amend a complaint may be denied when amendment would be futile." *Tocker v. Phillip Morris Cos., Inc.*, 470 F.3d 481, 491 (2d Cir. 2006) (citing *Ellis v. Chao*, 336 F.3d 114, 127 (2d Cir. 2003)); *see also Kim v. Kimm*, 884 F.3d 98, 105–06 (2d Cir. 2018) ("Therefore, because the proposed amendments would have no impact on the basis for the district court's dismissal and would consequently be futile, the district court did not abuse its discretion in denying [plaintiff] leave to amend." (citing *Ellis*, 336 F.3d at 127)).

As suggested above, the sole basis for granting leave to amend the Amended Complaint would be to provide Ms. Anderson an opportunity to plead properly a Section 1983 claim, as limited above. As to her Section 1981 claim, having alleged being "employed by the State of Connecticut Department of Social Services [("DSS")]," Am. Compl. ¶ 3, she cannot plausibly allege anything differently now. As for the dismissed state law claims, given their jurisdictional deficiency – one that cannot be addressed by an amended pleading – granting leave to amend the Amended Complaint on that basis also would be futile.

Accordingly, leave to amend the Amended Complaint will be granted, but only as to her Section 1983, to the extent properly pled and limited in scope, as discussed above.

19

**IV.   CONCLUSION**

For the reasons stated below, Defendants' motion to dismiss is **GRANTED**.

Ms. Anderson will be granted leave to file a Second Amended Complaint by **April 30, 2021**. Any such pleading, however, must be limited to the only viable claim in federal court: her federal claim brought under 42 U.S.C. §1983, as limited by this opinion. It would be futile, and the Court therefore does not grant her leave to file a Second Amended Complaint that includes any of her alleged Connecticut statutory and common-law claims against any of these Defendants, as well as her alleged federal claim brought under 42 U.S.C. § 1981.

**SO ORDERED** at Bridgeport, Connecticut, this 30th day of March, 2021.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE