**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

MONTAZ ALEXANDER,
    *Plaintiff,*

     v.                       No. 3:20-cv-370 (VAB)

LORENZO A. LEWIS, ET AL.,
    *Defendants.*

**RULING AND ORDER ON MOTIONS IN LIMINE**

Defendants, Lorenzo Lewis ("Mr. Lewis") and Jean Rhoden ("Ms. Rhoden") (together "Defendants"), have filed four separate motions *in limine*, ECF Nos. 240, 241, 242, and 243, seeking to preclude the introduction of various types of evidence during the upcoming jury trial in this case.

For the reasons outlined below, Defendants' motion to exclude evidence relating to Mr. Lewis's prior arrest and criminal charges, ECF No. 240, and their motion to exclude evidence relevant only to previously dismissed claims, ECF No. 241 are **GRANTED**.

Defendants' motion to exclude evidence of harassment complaints against Mr. Lewis prior to March 2018, ECF No. 242, is **DENIED** without prejudice to renewal at trial.

Defendants' motion to exclude evidence of Ms. Dana Anderson's medical treatment and conditions, ECF No. 243, is **GRANTED in part** to the extent that Ms. Anderson's treating providers seek to provide expert testimony and introduce Ms. Anderson's medical records, and **DENIED in part** to the extent that Defendants seek to preclude any testimony from Ms. Anderson's medical providers regarding having been specifically told by her about the alleged sexual assault, and to the extent that any of her medical records specifically indicate having been told by Ms. Anderson of the alleged sexual assault. Any related medical records will not be

admissible as exhibits, although any testifying medical provider may have his or her recollection refreshed by such records, even though they will not be admitted into the record as evidence, or otherwise shown to the jury.

Defendants' motion to exclude the testimony of Ms. Alexander regarding Ms. Anderson's medical and physical condition, ECF No. 243, is **DENIED** without prejudice to renewal at trial.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

The Court assumes the parties' familiarity with the factual and procedural background of this case and summarizes only the history that is relevant to these motions. *See* Ruling and Order on Mot. for Summ. J., ECF No. 181 at 2–9 (Sept. 29, 2023) ("Order on MSJ").

On September 29, 2023, the Court ruled on Defendants' motion for summary judgment. Order on MSJ. The Court denied summary judgment on Ms. Anderson's hostile work environment theory of sex discrimination under Section 1983 against Defendants Lewis and Rhoden, *id* at 31–33, 46–47; and granted summary judgment on Counts One, Two, Six, and Seven of Ms. Anderson's claims and any other claims against Marybeth Bonsignore, Terri-Lynn Johnston, Aimee Plourde, Astread Ferron-Poole, and Roderick Bremby, *id.* at 23–25, 28–31, 36–38, 40–42, 44–46, 50, 52–57.

On October 6, 2023, Defendants moved for reconsideration of the denial of summary judgement for Plaintiff's surviving claims. *See* Mot. for Reconsideration, ECF. No. 185 (Oct. 6, 2023).

On December 6, 2023, the Court denied Defendants' motion for reconsideration. *See* Order denying Mot. for Reconsideration, ECF No. 199 (Dec. 6, 2023).

On March 18, 2024, Ms. Anderson moved to substitute her daughter, Montaz Alexander, Conservator for the Estate of Dana Anderson, as Plaintiff in this matter ("Ms. Alexander" or "Plaintiff"). Mot. to Substitute, ECF No. 228 (Mar. 18, 2024)

On April 17, 2024, the Court granted Ms. Anderson's motion to substitute. Order granting Mot. to Substitute, ECF No. 230 (Apr. 17, 2024)

On August 2, 2024, the parties filed separate trial memoranda. Def. Trial Memo., ECF No. 244 (Aug. 2, 2024); Pl. Trial Memo., ECF No. 245 (Aug. 2, 2024) ("Pl. Trial Memo").

On August 2, 2024, Defendants filed four motions *in limine*. *See* ECF Nos. 240, 241, 242, and 243.

On August 20, 2024, Plaintiff filed her memoranda in opposition to Defendants' motions *in limine*. *See* ECF Nos. 254, 255, 256, and 257.

On August 26, 2024, Defendants filed their replies to Plaintiff's memoranda in opposition to Defendants' motions *in limine*. *See* ECF Nos. 258, 259, 260, and 261.

## II.      STANDARD OF REVIEW

Motions *in limine* provide district courts with the opportunity to rule in advance of trial on the admissibility and relevance of certain forecasted evidence. *See Luce v. United States*, 469 U.S. 38, 40 n.2 (1984); *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996). "A district court's inherent authority to manage the course of its trials encompasses the right to rule on motions *in limine*." *Highland Cap. Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 176 (S.D.N.Y. 2008) (citing *Luce*, 469 U.S. at 41 n.4).

A court should only exclude evidence on motions *in limine* if the evidence is "clearly inadmissible on all potential grounds." *Levinson v. Westport Nat'l Bank*, No. 3:09-CV-1955

(VLB), 2013 WL 3280013, at *3 (D. Conn. June 27, 2013) (internal quotation marks omitted).

The court also retains discretion to "reserve judgment until trial, so that the motion is placed in the appropriate factual context." *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 643 F. Supp. 2d 471, 476 (S.D.N.Y. 2009) (internal quotation marks omitted).

## III.   DISCUSSION

Defendants' motions *in limine* seek to preclude (1) evidence relating to Mr. Lewis's prior criminal proceedings, (2) evidence relating to unsubstantiated complaints against Mr. Lewis, (3) evidence relevant only to previously dismissed claims, and (4) evidence and testimony from Ms. Anderson's medical providers.

The Court will address each motion in turn.

### A.  The Motion *in Limine* re Prior Arrest and Criminal Charges, ECF No. 240

"Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. "Irrelevant evidence is not admissible." Fed. R. Evid. 402.

Although relevant, evidence may be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Unfair prejudice under Rule 403 "may be created by the tendency of the evidence to prove some adverse fact not properly in issue or unfairly to excite emotions against the defendant." *United States v. Quattrone*, 441 F.3d 153, 186 (2d Cir. 2006) (quoting *United States v. Figueroa*, 618 F.2d 934, 943 (2d Cir. 1980)). To warrant excluding evidence under Rule

403, "[t]he prejudice must be unfair in the sense that it could unduly inflame the passion of the jury, confuse the issues before the jury, or inappropriately lead the jury to convict on the basis of conduct not at issue in the trial." *Quattrone*, 441 F.3d at 186.

In addition, Rule 609 permits evidence in a civil trial related to a criminal conviction, but only for the purpose of "attacking a witness's character for truthfulness by evidence of a criminal conviction [if] a crime ... was punishable ... by imprisonment for more than one year." Fed. R. Evid. 609(a). Moreover, in a civil case this evidence "must be admitted, subject to Rule 403[.]" Fed. R. Evid. 609(a)(1)(A).

Defendants seek to exclude evidence of Mr. Lewis's arrest and criminal charges arising out of the alleged assault that took place on March 22, 2018. Defs. Mot., ECF No. 240 at 1.

Plaintiff argues that evidence of Mr. Lewis's "arrest, plea and his acceptance into the state's Accelerated Rehabilitation Program are inextricably tied to his dishonesty" and that his arrest and charges may be used for impeachment under Rule 609(a)(2).  Pl. Mem. in Opp., ECF No. 254, at 8.

The Court disagrees.

Rule 609 concerns the admissibility of "a criminal conviction," and Mr. Lewis was not convicted of the charges brought against him.[1] Thus, Rule 609 is inapplicable to Mr. Lewis's arrest and criminal charges. See *Hyppolite v. Collins*, No. 3:11-CV-588 (WIG), 2015 WL 269219, at *2 (D. Conn. Jan. 21, 2015) ("Arrests generally are not admissible under Rule 609") (citing *Roguz v. Walsh*, No. 09–1052(TLM), 2013 WL 1498126, at *4 (D. Conn. April 5, 2013))

---

[1] To the extent Plaintiff argues that Mr. Lewis's acceptance into Connecticut's Accelerated Rehabilitation Program is a conviction, the Supreme Court of Connecticut has expressly found that it is not. *AFSCME, Council 4, Loc. 1565 v. Dep't of Correction*, 6 A.3d 1142, 1155 (Conn. 2010) (participant in Accelerated Rehabilitation Program "was not convicted and remained cloaked with the presumption of innocence afforded any arrestee.")

"In balancing potential prejudice against the probative value of the evidence under Rule 403, this Court may consider the availability of alternative means to present similar evidence." *Rosenthal v. City of New York*, No. 09 Civ. 5270 (WHP), 2011 WL 10901799, at *2 (S.D.N.Y. Sept. 6, 2011) (internal quotations and citation omitted). Here, Plaintiff seeks to introduce Mr. Lewis's arrest as evidence of his "dishonesty." Pl. Mem. in Opp., ECF No. 254, at 8. In particular, Plaintiff intends to argue that Mr. Lewis's arrest is evidence of "false statements he communicated to DSS, investigators, and in his sexual harassment complaint he filed against Ms. Anderson on March 28, 2018." *Id.* Because Mr. Lewis's arrest arose out of the alleged assault in 2018, however, Plaintiff may introduce other evidence supporting her version of events and thus has alternative means of presenting evidence of the underlying facts and circumstances leading to Mr. Lewis's arrest.

To the extent that Plaintiff seeks to introduce Mr. Lewis's arrest and criminal charges to establish the veracity of Ms. Anderson's account of the alleged assault, this is precisely the kind of prejudicial inference courts seek to avoid when excluding evidence of arrests. *See Woolfolk v. Baldofsky*, No. 19-CV-3815 (WFK) (ST), 2022 WL 2600132, at *6 (E.D.N.Y. July 8, 2022) ("[E]vidence of Plaintiff's arrests may carry a 'grave risk of unfair prejudice, confusing the issues, and misleading the jury.'") (quoting *Davis v. Velez*, 15 F. Supp. 3d 234, 252 (E.D.N.Y. 2014), *aff'd*, 797 F.3d 192 (2d Cir. 2015)); *Roguz*, 2013 WL 1498126 at *4 ("Arrest without more does not, in law any more than in reason, impeach the integrity or impair the credibility of a witness." (quoting *Michelson v. United States*, 335 U.S. 469, 482 (1948)); *Moore v. Sequeira*, No. 3:21-CV-00787 (VAB), 2024 WL 1013301, at *6 (D. Conn. Mar. 8, 2024) ("[E]vidence of arrests alone, without convictions, is not generally admissible").

Accordingly, Defendants' motion to preclude evidence of Mr. Lewis's arrest and criminal charges will be granted.

### B.   The Motion *in Limine* re Evidence Relevant to Dismissed Claims, ECF No. 241

Defendants seek to exclude evidence and witnesses relevant only to claims that have been previously dismissed from this action. Defs. Mot., ECF No. 241. Defendants specifically seek to prevent Plaintiff from calling former defendants dismissed from the case, Marybeth Bonsignore, Terri-Lynn Johnston, Aimee Plourde, Astread Ferron-Poole, and Roderick Bremby, as well as "those former defendants' investigations, reports and conclusions that were generated in connection with Anderson's termination."  Defs. Mot., ECF No. 241-1, at 3.

Plaintiff opposes this motion, arguing that "[t]he motives and intent of the authors of the reports are at issue[.]" Pl. Mem. in Opp., ECF No. 255, at 11. Plaintiff further states that she intends to use this evidence "as prior inconsistent statements, and to question the credibility of witnesses." *Id.* at 10. Plaintiff claims that such use "does not amount to relitigation of the arbitration as the defendants asserts [sic]." *Id.*

The Court disagrees.

Plaintiff may not relitigate issues before a jury that have already been dismissed on summary judgment. Under the long-standing "law of the case doctrine," "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618 (1983), *decision supplemented*, 466 U.S. 144 (1984). According to this doctrine, a court's own prior decision "'should generally be adhered to…' unless 'cogent and compelling reasons militate otherwise.'" *Johnson v. Holder*,

564 F.3d 95, 99 (2d Cir. 2009) (quoting *United States v. Quintieri*, 306 F.3d 1217, 1225 (2d Cir. 2002)).

Where, as here, claims have been dismissed on summary judgment, courts generally preclude testimony or evidence regarding such dismissed claims during a jury trial. *See, e.g.*, *Morales v. N.Y. Dep't of Labor*, No. 06-CV-899 (MAD), 2012 WL 2571292, at *4 (N.D.N.Y. July 3, 2012) (finding "that any testimony or evidence about plaintiff's previously dismissed discrimination claim is excluded" as irrelevant and prohibiting evidence regarding events prior to February 16, 2006 where a "prior Order narrowed the scope of plaintiff's retaliation claim to protected activities that occurred on or after February 16, 2006"); *Hamza v. Saks Fifth Ave., Inc.*, No. 07 CIV. 5974 (FPS), 2011 WL 6187078, at *7 (S.D.N.Y. Dec. 5, 2011) ("Any testimony and/or evidence relating to the plaintiff's previously dismissed disability discrimination claim is wholly irrelevant to any issue in contention in her current retaliatory discharge claim, and thus … is hereby precluded from introduction at trial pursuant to Federal Rules of Evidence 401 and 402").

Plaintiff's opposition brief makes clear her intent to relitigate before the jury previously dismissed claims, including Ms. Anderson's wrongful termination claim and claims brought against former defendants Bonsignore, Johnston, Plourde, Ferron-Poole, and Bremby. See Pl. Mem. in Opp., ECF No. 255 at 10 ("Ms. Anderson's termination resulted from DSS's failure to provide full treatment to her constitutional rights, by producing and subsequently producing incomplete investigations, and conclusions lacking in thoroughness, as to DSS regulations and state law required. The facts show that the report[s] that were submitted by Ms. Johnston and Ms. Bonsignore were integral to understand how and why the decision to terminate her was

made, and more importantly, they revealed both investigators [sic] failure to interview key witnesses and review critical documents.")

Because of the Court's prior rulings, such evidence would be irrelevant and unnecessary, and any potential probative value is substantially outweighed by the risk of unfair prejudice, confusion, and delay. *See* Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, [or] undue delay . . . .").

Accordingly, to the extent that Defendants seek to preclude Plaintiff from re-litigating issues that the Court has already been decided, Defendants' motion will be granted.

### C.  The Motion *in Limine* re Prior Complaints Against Mr. Lewis, ECF No. 242

Federal Rule of Evidence 404(b)(1) prohibits the admission of evidence of a "crime, wrong, or act" to "prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). Such evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident," Fed. R. Evid. 404(b)(2), however, so long as it is "relevant to some disputed issue in the trial and satisfies the probative-prejudice balancing test of Fed. R. Evid. 403." *United States v. Brennan*, 798 F.2d 581, 589 (2d Cir. 1986) (internal quotations and citations omitted). "A trial court has 'broad discretion' in decisions relating to extrinsic acts." *Berkovich v. Hicks*, 922 F.2d 1018, 1022 (2d Cir. 1991) (citing *Ismail v. Cohen*, 899 F.2d 183, 188 (2d Cir.1990)).

Defendants seek to exclude "unsubstantiated reports that [Mr. Lewis] engaged in sexual harassment or workplace violence before March 22, 2018," and claim that such evidence is

"prior wrongful act evidence intended to support Anderson's account of the elevator assault" impermissible under Rule 404 and barred by Rule 403. Defs. Mot., ECF No. 242-1 at 2, 3.

Plaintiff argues that this evidence goes to Mr. Lewis's "intent to assault Ms. Anderson, his motive to do so, [] the opportunity he took . . ., and his plan to avenge Ms. Anderson's previously insulting him," and "the probative value of the evidence… is not outweighed by any danger of unfair prejudice." Pl. Mem. in Opp., ECF No. 256, at 8–9, 11.

The Court agrees, in part.

"Hostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002). In the context of Title VII claims, the Supreme Court cautions that "whether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). "Since one of the critical inquiries with respect to a hostile environment claim is the nature of the environment itself, evidence of the general work atmosphere is relevant." *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 150 (2d Cir. 1997). "[E]vidence of harassment directed at other co-workers can be relevant to an employee's own claim of hostile work environment discrimination. 'Because the crucial inquiry focuses on the nature of the workplace environment *as a whole*, a plaintiff who herself experiences discriminatory harassment need not be the target of other instances of hostility in order for those incidents to support her claim.'" *Leibovitz v. New York City Transit Auth.*, 252 F.3d 179, 190 (2d Cir. 2001) (emphasis in original) (quoting *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir. 2000)); *see also Crawford v. Nat'l R.R. Passenger Corp.*, No. 3:15-CV-131 (JBA), 2015 WL 8023680, at *8 (D. Conn. 2015) ("[T]he mere fact that Mr. Crawford was not present for all of the racist comments made by his co-workers; that not all of the racist conduct was directed at Mr.

Crawford specifically; or that Mr. Crawford may have learned of some racist or harassing behavior from a co-worker rather than experiencing it directly, does not make his allegations regarding that conduct irrelevant to his hostile work environment claim.")

Mindful of the need to consider the totality of the circumstances in hostile work environment claims, the Second Circuit has chastised district courts that failed to consider evidence of harassment of other employees. *Perry*, 115 F.3d at 151 ("Evidence of the harassment of women other than Perry, if part of a pervasive or continuing pattern of conduct, was surely relevant to show the existence of a hostile environment at Ethan Allen and could have been found probative of the company's notice of that environment within the period that the district court viewed as relevant. The district court did not identify any respect in which the prejudice that might result from such probative evidence would have been unfair."); *Schwapp v. Town of Avon*, 118 F.3d 106, 112 (2d Cir. 1997) ("[T]he incidents relating to other minorities and those occurring before Schwapp's tenure may be of limited probative value, but cannot be ignored on summary judgment. Whether Schwapp was aware of them during his employment, and, more significantly, whether in light of these incidents, the incidents Schwapp experienced more directly would reasonably be perceived, and were perceived, as hostile or abusive are factual issues that should be resolved by a trier of fact." (internal quotation and citation omitted)). Thus, though a key issue in this case is the alleged March 22, 2018 assault, Ms. Anderson's claims of prior harassment, and claims of sexual harassment made by other employees may be relevant to Plaintiff's hostile workplace environment claim.

Defendants cite to *Hardy v. Town of Greenwich*, 629 F. Supp. 2d 192 (D. Conn. 2009), and *Berkovich v. Hicks*, 922 F.2d 1018 (2d Cir.1991), for the proposition that courts adopt a stricter standard for evidence of prior complaints for hostile work environment claims brought

under in Section 1983 than for those brought under Title VII. Def. Mot., ECF. No. 242-1 at 1, 5–6. Those cases, however, excluded evidence of prior civilian complaints that plaintiffs sought to use against defendant-police officers under the narrow principle that "evidence of civilian complaints is properly excluded on Rule 403 grounds where those complaints have been properly investigated and have been found to be unsubstantiated." *Hardy*, 629 F. Supp. 2d at 197. Considering that police departments "receive[] many civilian complaints, some of which are undoubtedly valid and some of which are not[,]" in the unique context of Section 1983 claims against defendant police officers, "[a]n unsubstantiated complaint, standing alone, is not sufficiently probative to outweigh its potential prejudice." *Id.* In addition, *Berkovich* did not even involve a hostile environment claim, and thus civilian complaints there were also not relevant to the discrete act, nor did they "show the kind of modus operandi claimed in [that] case." *Berkovich*, 922 F.2d at 1022. Moreover, in *Hardy*, which did concern a Section 1983 hostile work environment claim, the court left open the possibility for introducing civilian complaints "where [Plaintiffs] can show that a civilian complaint was not investigated or the investigation was simply a sham," and "consider[ed] allowing first-hand evidence regarding Chief Walters's treatment of minorities, if such evidence exists, to show discriminatory intent only." *Hardy*, 629 F. Supp. 2d at 198.

"Most of the core substantive standards that apply to claims of discriminatory conduct in violation of Title VII are also applicable to claims of discrimination in employment in violation of § 1981 or the Equal Protection Clause." *Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 225 (2d Cir. 2004) (discussing substantive differences between claims brought under Title VII and §§ 1981 and 1983). The Court is not aware of any authority indicating that, in the context of an hostile work environment claim brought by an employee against her fellow employee and

employer, temporally proximate evidence of prior complaints against the defendant employee brought by the plaintiff-employee and other employees would be admissible in the context of a Title VII claim, but barred if brought under a Section 1983 claim.

As a result, the Court declines to impose any such rule requiring a heightened finding for Section 1983 claims here. Moreover, such evidence is not impermissible under Rule 404(b) nor is it unduly prejudicial under Rule 403 so long that it is offered to support Ms. Anderson's claims of a hostile work environment created from Mr. Lewis's alleged "continuous assaultive conduct against Ms. Anderson." Pl. Mem. in Opp., ECF No. 256, at 8; *see Perry*, 115 F.3d at 151 ("Evidence of the harassment of [other employees], if part of a pervasive or continuing pattern of conduct, was surely relevant to show the existence of a hostile environment . . . The district court did not identify any respect in which the prejudice that might result from such probative evidence would have been unfair.").

While the parties do not allege the precise "reports that Mr. Lewis engaged in sexual harassment or workplace violence before March 22, 2018," that Plaintiff seeks to introduce or Defendants seek to exclude, the Court notes that Mr. Lewis's alleged discriminatory conduct towards Ms. Anderson of the kind referenced in this Court's order denying summary judgment on Plaintiff's hostile work environment claim would be admissible as evidence of the existence of a hostile work environment. *See* Order on MSJ at 31–33, 46–47. Although the parties debate the veracity of such allegations, these credibility determinations should be made by the jury. *Schwapp*, 118 F.3d at 112 (2d Cir. 1997) (while evidence of harassment of other employees, "may be of limited probative value. . . . [w]hether [plaintiff] was aware of them during his employment, and, more significantly, whether in light of these incidents, the incidents [plaintiff]

experienced more directly would reasonably be perceived, and were perceived, as hostile or abusive are factual issues that should be resolved by a trier of fact.").

Accordingly, to the extent Defendants seek to exclude reports that Mr. Lewis engaged in sexual harassment or workplace violence from 2014–2018 that are relevant to Plaintiff's hostile work environment theory, Defendants' motion is denied without prejudice to renewal, depending on the specific evidence sought to be introduced, and whether any such evidence's probative value is outweighed by its prejudicial effect.

### D.  The Motion *in Limine* re Medical Treatment and Conditions, ECF No. 243

Defendants seek to exclude testimony and evidence related to (1) medical treatment from Ms. Anderson's medical "providers whose opinions were not disclosed as required by Fed. R. Civ. P. 26(a)(2)(C)"; (2) "medical conditions that are not relevant to Anderson's claims under Fed. R. Evid. 402 and are unduly prejudicial and likely to confuse the jury under Fed. R. Evid 40"; and (3) "observations of Anderson's medical conditions or claimed injuries by any nontreating expert whose opinions were not disclosed as required by Fed. R. Civ. P. 26(a)(2)(B) or by lay witnesses not qualified to offer such testimony under Fed. R. Evid. 702." Defs. Mot., ECF No. 243-1, at 1.

The Court will address each category of medical treatment evidence that Defendants seek to exclude in turn.

#### 1.  Testimony and Evidence from Medical Providers

"A treating physician fits the definition of an expert who may give opinion testimony under Federal Rule of Evidence 702, but a treating physician need not be explicitly designated as an expert witness under the Federal Rules of Civil Procedure," nor does "[a] party seeking to use

the treating physician . . . need to provide a written expert report under Rule 26(a)(2)(B)."
*Barack v. Am. Honda Motor Co.*, 293 F.R.D. 106, 108 (D. Conn. 2013) (citing Fed. R. Civ. P.
26(a)(2)(B)). Still, treating physicians testifying as experts must comply with the requirements of
Federal Rule of Civil Procedure 26(a)(2)(C), which requires a statement providing "(i) the
subject matter on which the witness is expected to present evidence under Federal Rule of
Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is
expected to testify." Fed. R. Civ. P. 26(a)(2)(C).

"Although less is required in a [Rule 26(a)(2)(C)] disclosure, it is not acceptable to
provide scant details." *Olutosin v. Gunsett*, No. 14-CV-00685 (NSR), 2019 WL 5616889, at *3
(S.D.N.Y. Oct. 31, 2019) (citing *Barack*, 293 F.R.D. at 108) (internal quotations omitted). "Rule
26(a)(2)(C) . . . clearly requires treating physicians to, at a minimum, produce and disclose
'summaries' of the facts and opinions to which the physician expects to testify." *Barack*, 293
F.R.D. at 108. "Ultimately, the question is whether the disclosure provides 'sufficient detail to
permit defendants to prepare their defense.'" *McAfee v. Naqvi*, No. 3:14-CV-410 (VAB), 2017
WL 3184171, at *5 (D. Conn. 2017) (citing *Anderson v. E. CT Health Network, Inc.*, No. 3:12-
CV-785 (RNC), 2013 WL 5308269, at *1 (D. Conn. 2013)). Indeed, "[t]he purpose of Rule 26(a)
is to prevent an ambush, resulting in surprise or prejudice, of undisclosed or late disclosed
evidence." *Equant Integrations Servs., Inc. v. United Rentals (N. Am.), Inc.*, 217 F.R.D. 113,
117 (D. Conn. 2003).

Where treating physicians fail to meet the requirements of Rule 26(a)(2)(B), however,
they may provide lay testimony. *Olutosin*, 2019 WL 5616889 at *5 ("In general, a treating
physician may testify to 'opinions formed in the course of treatment without regard to the
disclosure requirements of Rule 26(a)(2).'" (citing *Lewis v. Triborough Bridge*, No. 97-CIV.-

0607 (PKL), 2001 WL 21256, at *1 (S.D.N.Y. Jan. 9, 2001))). Still, "[a] treating physician who has not complied with the reporting requirement of Rule 26(a)(2)(B) should not be permitted to render opinions outside the course of treatment and beyond the reasonable reading of the medical records," and "is prohibited from testifying concerning opinions not gleaned from his own diagnoses and treatment of the plaintiff." *Barack*, 293 F.R.D. at 109 (internal quotations and citation omitted); *see also id.* ("If a treating physician is called upon to review any materials outside the four corners of her medical records and to opine greater than what is reflected in those medical records, . . . such treating physician [would fall] within the parameters of Rule 26(a)(2)(B) and a written expert report would be required.").

Defendants argue that Plaintiff "has not disclosed any experts under Rule 26(a)(2) and has not produced a single summary of the expected testimony of [Ms. Anderson's] treating providers under Rule 26(a)(2)(C). . . . Moreover, Plaintiff has withheld all treatment records from four of the six providers she identified in discovery, making it impossible for the Court, or Defendants, to determine whether their testimony meets the admissibility standard under FRE 702." Defs. Mot., ECF No. 243-1, at 3.

Plaintiff asserts that she provided Defendants with medical records from Melissa Kelly on August 1, 2024, and argues that testimony from Ms. Anderson's medical providers is admissible under Federal Rules of Evidence 702 and 803. *See* Pl. Mem. in Opp., ECF No. 257 at 7–9.

The Court disagrees.

Here, Plaintiff has not—and does not contend—that she provided Defendants with any disclosures required under Rule 26(a)(2)(C). In fact, Plaintiff's exhibits indicate that, although Defendants submitted a discovery request requiring Plaintiff to "identify each person whom the

Plaintiff expects to call as a witness or as an expert witness at trial concerning the incidents alleged in the Complaint, and for each such witness, provide the subject matter upon which he/she is expected to testify." Plaintiff's response, "Expert witnesses are all Plaintiff's medical providers," Pl. Mem. in Opp., ECF No. 257-1 at 25–26, failed to "produce and disclose 'summaries' of the facts and opinions to which the physician expects to testify" as required under Rule 26(a)(2)(C). *Barack*, 293 F.R.D. at 108.

Moreover, although Plaintiff identified several healthcare providers and the medical conditions for which she was treated in her discovery responses, Def. Mot. ECF No, 243-2 at 3–4, her responses merely relate to Ms. Anderson's last visit to the provider, and do not identify the providers as expert witnesses, let alone provide the subject matter of their testimony.[2] Plaintiff

---

[2] Plaintiff provided the following responses for the six medical providers at issue here:

j. I believe my last visit to Dr. David Waitzman, concerned my PTC-eye and blood. The last visit was in May 2019, May 15, 2018, and May 31, 2018 (out of medications). The visits also had to do with my medications and my general health, as it relates to all the conditions I suffer from. I was experiencing twitching in my eyes, face and body, migraines and also iron deficiency and heavy bleeding (anemia). When I visited on May 15, 2018, the visit had to do with my losing my insurance because I was in danger of being fired because of my being assaulted on March 2018. A letter was written for me concerning my ongoing memory loss.

. . .

l. I believe my last visit to Dr. Ashley Burkman, concerned my brain fog, fluid on my brain migraines, Pseudotumor Cerebri (PTC-eye ), my memory loss, fatigue, the assault from March 2018 on April 30, 2018, stress loss of menses, migraines and heavy bleeding (iron deficiency). The visit also had to do with my medications and my general health, as it relates to all the conditions I suffer from.

. . .

o. I don't recall the specific dates when I may have gone to the Medical Care Ctr at Silver Lane Clinic, but I was treated for injuries arising from the assault and my general health, because I had lost my medical insurance. The visit had to do with my heavy bleeding, my medications and my general health, as it relates to all the conditions I suffer from. When I receive these records, I will better know.

p. I also don't recall the specific dates when I may have sought treatment at AFC Urgent Care, Hospital, Urgent Care Clinic, in Vernon, but I was treated for injuries arising from the assault and my general health, because I had lost my medical insurance. The visit also had to do with my medications and my general health, as it concerns to all the conditions I suffer from. When I receive these records, I will better know.

thus fails to provide "sufficient detail to permit defendants to prepare their defense." *Anderson*, 2013 WL 5308269 at *1.

Accordingly, because Plaintiff failed to comply with the expert disclosure requirements of Rule 26(a)(2), to the extent that Defendants seek to exclude expert testimony from Plaintiff's medical providers, the Court grants Defendants' motion, and Plaintiff's medical providers may not "testify[] concerning opinions not gleaned from [their] own diagnoses and treatment of [Ms. Anderson]." *Barack*, 293 F.R.D. at 109.

As for the admissibility of medical treatment records, "[m]edical reports and treatment records may not be used to circumvent the necessity for opinion testimony as to diagnosis, causation, and prognosis." *Brown v. Clayton*, No. 3:11-CV-714 (JCH), 2013 WL 4498699, at *4 (D. Conn. Aug. 20, 2013). Courts have declined to preclude expert opinion reports, however, where "defendants were provided with early notice of [the expert's] existence, her treatment records, and an opportunity to depose her." *Eslin v. Hous. Auth. of the Town of Mansfield*, No. 3:11-CV-134 (JCH), 2012 WL 3090976, at *5 (D. Conn. July 13, 2012).

Plaintiff has provided Defendants with "the treatment records of Dr. Waitzman . . . and Dr. Burkman," Defs. Mot., ECF No. 243-1 at 5, and Defendants sent a deposition notice to Dr. Waitzman as early as January 2022, Pl. Mot., ECF No. 257 at 2. While these circumstances

---

q. I believe I began treatment with therapist Melissa Kelly in or around April 2018 concerning the assault by Lorenzo Lewis, and I soon had to terminate treatment in May, because I was terminated from the Department of Social Services (DSS) and I did not have medical insurance. I resume treatment until September 2018, only after my mother paid for my sessions to that time.

r. I also began treatment/counseling with Woman and Family Center, in Meriden, around April 2018. I do not recall when I stopped, but I believe I consulted/spoke to them on a few occasions. On June 8, 2022, they called and informed that "by statute 'they do not accept third party releases, even when signed by a victim/patient,' which means I will have to make her way to the Center to sign their release in person." She cannot make my way there until the Week of June 13, 2022, because I cannot drive that distance because of my memory loss, so I will have to rely on someone to take me.

Defs. Mot., ECF No. 243-2, at 3–4.

resemble those in *Eslin*, here, no deposition took place. Regardless of whether Defendants could have deposed Dr. Waitzman and Dr. Burkman, Defendants were unable to probe key information regarding Drs. Waitzman and Burkman's "curriculum vitae, the medical documents provided earlier through both formal and informal discovery, [their] medical opinion as to diagnosis and causation and . . . any prior experience giving testimony," *Eslin*, 2012 WL 3090976 at *5. As a result, unlike the parties in *Eslin*, Defendants have been prejudiced by Plaintiff's failure to comply with Rule 26(a)(2). Moreover, Plaintiff did not provide Defendants with any records from the Women and Family Center, Silver Lane Clinic, or AFC Urgent Care, Defs. Reply, ECF No. 261 at 1, and did not provide records from Melissa Kelly until August 1, 2024, less than six weeks before the start of trial, Pl. Mem. in Opp., ECF No. 257 at 9. While Plaintiff's counsel provides numerous excuses as to his delay in providing medical treatment records from Melissa Kelly and his failure to provide records from the Women and Family Center,[3] the two-page letter Plaintiff submitted on the eve of trial is unfairly prejudicial. Given the imminent trial date, Plaintiff's offer to allow Ms. Kelly to be deposed does not mitigate this risk of prejudice.[4]

---

[3] While Plaintiff asserts that these delays were attributable to Ms. Kelly "clos[ing] her business and [] not be[ing] found for two years," Pl. Mot., ECF No. 257 at 9, Plaintiff did not investigate Ms. Kelly's current whereabouts in earnest until "[a]fter the Court issued its Order scheduling the case for trial, and … after [Plaintiff] was made substitute Plaintiff in this case," in March 2024. *Id.* at 4. As for records from the Women and Family Center, Plaintiff asserts that "[the Center] stated that they do not provide records by Connecticut Statutes." *Id.* at 12. Ms. Anderson previously represented in her June 9, 2022 discovery responses, however, that while the Women and Family Center "by statute. . . do not accept third party releases, even when signed by a victim/patient," she could "make her way to the Center to sign their release in person." Defs. Mot., ECF No. 243-2, at 4. Plaintiff does not explain why Ms. Anderson did not attempt to obtain a release in person in the more than two years since then. Plaintiff also offers no explanation for her apparent failure to provide treatment records from Silver Lane Clinic or AFC Urgent Care.

[4] While Plaintiff does not name Hartford HealthCare as a potential witness in its pretrial disclosures, Plaintiff represents that "the defendants received the treatment notes of Mariam Nasiri, APRN [from Hartford HealthCare] . . .on August 11, 2024." Pl. Mem. in Opp., ECF No. 257 at 11. Thus, any records from Hartford HealthCare are likewise prejudicial for similar reasons and would be excluded should Plaintiff have intended to offer testimony or evidence regarding this medical treatment at trial.

Accordingly, Plaintiff may not belatedly submit medical treatment records from Ms. Anderson's providers in order to circumvent the requirements of Rule 26(a)(2).[5]

### 2. The Relevance of Plaintiff's Medical Conditions

Beyond the issue of belatedly offered medical treatment records, there is a remaining issue as to whether any testimony from Ms. Anderson's medical providers is relevant. Relevance is a "very low standard," and, "unless an exception applies, all relevant evidence is admissible," Fed. R. Evid. 402. *United States v. White*, 692 F.3d 235, 246 (2d Cir. 2012) (citations and quotation marks omitted). Under Federal Rule of Evidence 403, relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "[Rule 403] grants the trial judge broad discretion to determine whether to allow the introduction of relevant, but prejudicial, matters into evidence. *Fiacco v. City of Rensselaer, N.Y.*, 783 F.2d 319, 327 (2d Cir. 1986).

Defendants argue that "[t]estimony, treatment records and any records and/or documentation that are not directly related to the Anderson's claimed injuries in this lawsuit should be excluded" Defs. Mot., ECF No. 243-1, at 6.

---

[5] Significantly, even beyond the strictures of Rule 26, as discussed below, many of the medical records contained in the proffered exhibits are not admissible in the absence of expert testimony, supporting their relevance, or overcoming their prejudicial effect, even if relevant. *See Monk v. Bradt*, 778 F. Supp. 2d 352, 374 (W.D.N.Y. 2011) ("Without an expert witness to explain the terminology employed in the medical records and the significance of Monk's various injuries and treatments, introduction of the records could have resulted in delays while the jurors attempted to decipher their contents. . . . Thus, any probative value the medical records may have had would have been outweighed by the danger that they would have confused or misled the jury, or prolonged the trial to an unreasonable extent without any corresponding advantage.").

Plaintiff contends that such records "are admissible and relevant to show the physical and emotional damages" allegedly caused by Mr. Lewis's actions. Pl. Mem. in Opp., ECF No. 257 at 11.

The Court agrees, in part.

While Plaintiff's medical providers may be "permitted to offer opinion testimony on diagnosis, treatment, prognosis and causation, but *solely* as to the information [they] ha[ve] acquired through observation of [Ms. Anderson] in [their] role as a treating physician limited to the facts in [Ms. Anderson]'s course of treatment." *Barack*, 293 F.R.D. at 109 (citations and quotation marks omitted) (emphasis in original), because they cannot testify as expert witnesses, any such testimony would be "limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701.

But "expert medical opinion evidence is usually required to show the cause of an injury or disease because the medical effect on the human system of the infliction of injuries is generally not within the sphere of the common knowledge of the lay person." *Shegog v. Zabrecky*, 654 A.2d 771, 776 *cert. denied*, 656 A.2d 670 (Conn. App. Ct. 1995). And Plaintiff must demonstrate a causal link between her alleged physical and psychological injuries and Defendants' alleged actions. *See Gierlinger v. Gleason*, 160 F.3d 858, 872 (2d Cir. 1998) ("[A]s in all § 1983 cases, the plaintiff must prove that the defendant's action was a proximate cause of the plaintiff's injury."). "[U]nrelated medical evidence is not relevant or admissible, unless the claimed damages may be related to other medical conditions." *Scoma v. City of New York*, No. 16-CV-6693 (KAM) (SJB), 2021 WL 1784385, at *9 (E.D.N.Y. May 4, 2021). Yet, as discussed

above, Plaintiff has failed to properly designate expert witnesses, and may not introduce medical expert testimony.

As a result, because any lay testimony from treating physicians regarding Ms. Anderson's medical condition must rest on a foundation of expert testimony, linking any such conditions or treatment to the issue of liability in this case and/or to any damages flowing from her claims, any lay testimony from such treating physicians is not relevant, and to the extent relevant, any such relevant testimony would be substantially outweighed by its potential prejudicial effect. *Cf. Gold v. Dalkon Shield Claimants Tr.*, No. B-82-383 (EBB), 1998 WL 351456, at *3 (D. Conn.1998), *aff'd*, 189 F.3d 460 (2d Cir. 1999) (recognizing in the context of a summary judgment motion that, "[e]ven assuming that the plaintiff can show that the Dalkon Shield was defective and that she suffered the injuries she claims, without a proffer of expert medical testimony as to causation to link the defect to the injury, a reasonable jury could not find that the plaintiff has proved that the defect caused her specific injuries."); *Evans v. Bonner*, 196 F. Supp. 2d 252, 258 (E.D.N.Y. 2002) (granting summary judgment where plaintiff "[had] not identified any expert who will testify that his injury was aggravated as a result of the claimed delay in medical treatment . . . and admits that no medical records exist which supports that a delay in medical care results in aggravation of his injury.").

Nevertheless, her medical providers may testify as to the fact that Ms. Anderson told her about the alleged sexual assault, to the extent that any of her medical records specifically indicate having been told by Ms. Anderson of the alleged sexual assault.

Accordingly, consistent with the analysis above, any such testimony will be so limited, and any related records will not be admissible as exhibits, although any testifying medical provider may have his or her recollection refreshed by such records, even though they will not be

admitted into the record as evidence, or otherwise shown to the jury.[6] *See United States v. Maldonado-Rivera*, 922 F.2d 934, 976 (2d Cir. 1990) ("[W]here there was in fact no recognition or to turn a tentative identification into one that is certain, a party is generally entitled to attempt to refresh a witness's recollection, provided there is a foundation for believing that the witness once had knowledge of the fact as to which his recollection is to be refreshed." (internal quotation and citation omitted)); *see also* Fed. R. Evid. 612(a) ("This rule gives an adverse party certain options when a witness uses a writing to refresh memory: (1) while testifying; or (2) before testifying, if the court decides that justice requires the party to have those options.").

### 3.  Lay Witness Testimony from Ms. Alexander Regarding Plaintiff's Medical Conditions

In addition to the testimony of medical providers, Plaintiff also seeks to have Ms. Anderson's conservator, and current Plaintiff in this case, Ms. Alexander, testify as to Ms. Anderson's medical and physical condition.

Defendants argue that "[Ms. Alexander] should not [] be permitted to offer opinions or observations regarding Anderson's medical and physical condition through any undisclosed expert or any lay witness," including her own testimony. Defs. Mot., ECF No. 243-1, at 9. Defendants claim that Ms. Alexander "owns and operates a hair salon," and, although she worked with patients, Ms. Alexander did "not manage a client's medical treatment. . . [n]or did

---

[6] For example, Exhibits 100 through 103, 113 through 115, 125, and 129 to Plaintiff's Opposition to Defendants' Motion for Summary Judgment, ECF Nos. 156-8, 156-9, and 156-10 (June 16, 2023), contain a host of medical records about Ms. Anderson's medical condition. Consistent with this Ruling and Order, a medical provider could only testify, however, as to their recollection of statements made by Ms. Anderson regarding the alleged sexual assault, such as Dr. Burkman's treatment notes on page 23 of proposed Exhibit 129, *see* Pl. Trial Memo at 31. To the extent that a medical provider could testify as to having been told about the alleged sexual assault, the admission of the actual treatment record would be unnecessary and indeed cumulative. *See* Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . needlessly presenting cumulative evidence.").

she ever make any medical diagnosis." Defs. Reply, ECF No. 261, at 3–4. Defendants ask the

Court to limit Ms. Alexander's testimony to "her own observations of her mother's behavior but

not the actual or alleged cause of it." *Id.* at 4.

Plaintiff argues that she "has a degree in psychology and was a medical provider

concerning patients who suffered from severe memory loss for years. She has made numerous

observations with respect to Ms. Anderson, and she has been caring for her for substantial

periods, as such she is qualified to testify about her observations, pursuant to FRE 803, and about

her deposition testimony from June 25, 2024." Pl. Mem. in Opp., ECF No. 257 at 12.

The Court agrees, in part.

Because Ms. Alexander was not at any time her mother's "treating physician," Ms.

Alexander may not submit expert testimony from medical providers, as she has failed to comply

with the disclosure requirements. Moreover, as to Ms. Alexander's alleged observations of Ms.

Anderson, Rule 803(4)'s exception to the hearsay rule excludes only "[a] statement that (A) is

made for—and is reasonably pertinent to—medical diagnosis or treatment; and (B) describes

medical history; past or present symptoms or sensations; their inception; or their general cause."

Fed. R. Evid. 803(4). "The Advisory Committee Notes to Rule 803(4) recite the general principle

that statements of present condition are admitted 'if made to a physician for purposes of

diagnosis and treatment in view of the patient's strong motivation to be truthful,'" *Messier v.*

*United States*, 962 F. Supp. 2d 389, 394 (D. Conn. 2013). In her deposition, Ms. Alexander

conceded that she did not perform any medical diagnosis for her mother, Ms. Anderson. *See* Def.

Mot., ECF No. 261 at 4. Thus, any statements Ms. Anderson made to Ms. Alexander would not

fall under the hearsay exception provided for in Rule 803(4) as they were not "made for—[or]

reasonably pertinent to—medical diagnosis or treatment." *See* Fed. R. Evid. 803(4).

As a result, at best, Ms. Alexander's testimony is limited to her own observations, and cannot provide opinions "based on scientific, technical, or other specialized knowledge within the scope of Rule 702." *See* Fed. R. Evid. 701. But, even as to Ms. Alexander's observations, there remains the issue of their relevance to the issues of liability or damages. *See Scoma*, 2021 WL 1784385 at *9 ("[U]nrelated medical evidence is not relevant or admissible, unless the claimed damages may be related to other medical conditions."). Consistent with the analysis above, in the absence of expert testimony providing any foundation as to the relevance of any of Ms. Alexander's observations to the issue of liability or damages, any such testimony would be unduly prejudicial, substantially outweighing its probative value. *See Scoma*, 2021 WL 1784385 at *10 ("The court agrees that it would be unfairly prejudicial to permit defendants to present evidence of steroid use to the jury without fact or expert medical testimony explaining the contents and meaning of plaintiff's medical records and the effects of steroids on persons with low testosterone."); *DuchnowskI v. Cnty. of Nassau*, 416 F. Supp. 3d 179, 183 (E.D.N.Y. 2018) ("[M]any of the alleged injuries at issue here are complex in nature. For the same reasons that the court will not permit Plaintiff to testify about those injuries, absent a witness with specialized skill and knowledge, the Court will not permit the introduction of the records into evidence.").

But the Court will "reserve judgment until trial, so that the motion is placed in the appropriate factual context." *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 643 F. Supp. 2d at 476 (internal quotation marks omitted). As a result, before Ms. Alexander testifies, the Court will hear a proffer of her testimony, outside the presence of the jury, before resolving this issue definitively.

Accordingly, the motion to preclude the testimony of Ms. Alexander will be denied without prejudice to renewal at the appropriate time at trial.

IV.     **CONCLUSION**

For the foregoing reasons, Defendants' motion to exclude evidence relating to Mr. Lewis's prior arrest and criminal charges, ECF No. 240, and their motion to exclude evidence relevant only to previously dismissed claims, ECF No. 241 are **GRANTED**.

Defendants' motion to exclude evidence of harassment complaints against Mr. Lewis prior to March 2018, ECF No. 242, is **DENIED** without prejudice to renewal at trial.

Defendants' motion to exclude evidence of Ms. Anderson's medical treatment and conditions, ECF No. 243, is **GRANTED in part** to the extent that Ms. Anderson's treating providers seek to provide expert testimony, and seek to introduce Ms. Anderson's medical records, and **DENIED in part** to the extent that Defendants seek to preclude any testimony from Ms. Anderson's medical providers regarding having been specifically told by her about the alleged sexual assault, and to the extent that any of her medical records specifically indicate having been told by Ms. Anderson of the alleged sexual assault. Any related medical records will not be admissible as exhibits, although any testifying medical provider may have his or her recollection refreshed by such records, even though they will not be admitted into the record as evidence, or otherwise shown to the jury.

Defendants' motion to exclude the testimony of Ms. Alexander regarding Ms. Anderson's medical and physical condition, ECF No. 243, is **DENIED** without prejudice to renewal at trial.

**SO ORDERED** at New Haven, Connecticut, this 30th day of August, 2024.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE